UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JESUS ANTONIO CALDERON GONZALEZ,

Petitioners,

v.

JEREMY CASEY, et al.,

Respondents.

Case No.: 26-CV-3537 JLS (JLB)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

(ECF No. 1)

Presently before the Court is Petitioner Jesus Antonio Calderon Gonzalez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court are Respondents' Return to Habeas Petition ("Ret.," ECF No. 8) and Petitioner's Traverse ("Traverse," ECF No. 9). The Court also requested supplemental briefing which the Parties provided. *See* ECF No. 11 ("Pet. Supp."); ECF No. 12 ("Gov. Supp."). For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1).

**BACKGROUND**

Petitioner is a native and citizen of Mexico who entered the United States in 2001 when he was four years old. Pet. ¶¶ 23–24. Petitioner has resided in Southern California since his arrival. *Id.* ¶ 24. Petitioner graduated from Lakeside High School in Lake

Elsinore, California, in 2015. *Id.* ¶ 29. Petitioner has a U.S. citizen child which he shares custody over and is married to a U.S. citizen. *Id.* ¶¶ 25–27. In 2014, Petitioner applied for and received status under Deferred Action for Childhood Arrivals ("DACA") and an employment authorization card. *Id.* ¶ 31. In 2016, Petitioner attended trade school for concrete carpentry through the carpenters' union and was certified as a journey man. *Id.* ¶ 29. In 2019, Petitioner was arrested for a misdemeanor marijuana offense where he was subsequently granted misdemeanor pretrial diversion leading to the case's dismissal. *Id.* ¶ 32. Petitioner completed all terms of the diversion, has not re-offended, and has had his arrest record sealed. *Id.* Petitioner's DACA status lapsed after this arrest. *Id.* ¶ 31.

After his arrest, according to the I-213, DHS "determined that [Petitioner] was amendable to DHS/ICE enforcement action" and a form I-247A (Notice of Action) was lodged. *Id.* ¶ 33 (citing Pet., Ex. B at 3). Despite the Notice of Action being lodged, DHS took no steps to contact or otherwise detain Petitioner. *Id.* Petitioner continued to live and work without issue with the knowledge of immigration authorities for the next seven years. *Id.* On March 13, 2026, Petitioner was driving home from a work site in Indio County when he was pulled over by immigration authorities and arrested. *Id.* ¶ 35. On April 20, 2026, Petitioner was given a bond hearing under 8 U.S.C. § 1226(a). *Id.* ¶ 37. Petitioner's bond was denied based on his 2019 misdemeanor and speculations that Petitioner was "running heat for another vehicle" at the time of his arrest. *Id.* ¶¶ 38–40.

Petitioner brings the current petition arguing first, that DHS's decision to allow Petitioner to live at liberty in the United States for seven years after the lapse of his DACA status created a liberty interest requiring notice and a hearing prior to his detention, and second, that the immigration judge abused his discretion in denying Petitioner's bond. *See generally id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial

body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by*, *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

### I. Jurisdiction

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and 1252(b)(9). Ret. at 7–10. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents claim that Petitioner's claims arise from his detention during removal proceedings, which stem from the Attorney General's decision to commence such proceedings. Ret. at 7. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners'

objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging the legality of his liberty revocation, alleged wrongful arrest, and continued detention. Pet. ¶¶ 59–65. Petitioner is enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction. *See, e.g.*, *Navarro Sanchez v. Larose et al.*, 25-cv-2396 JES (MMP), 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (finding the Court had jurisdiction in a similar matter); *Noori v. Larose*, 807 F. Supp. 3d 1146, 1159–60 (S.D. Cal. 2025) (same).

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of or collateral to the removal process do not fall within the scope" of § 1252(b)(9). *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal quotation marks omitted)). Respondents argue that the Court lacks jurisdiction under § 1252(b)(9). Ret. at 8–10. Again, the Court disagrees. "[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*; *see also Garcia*, 803 F. Supp. 3d at 1072–73; *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings*, 583 U.S. at 294) (finding § 1252(b)(9) did not strip the court of jurisdiction because the petitioners were "not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal (as opposed to decision to deny them bond hearings); and they

[were] not even challenging any part of the process by which their removability w[ould] be determined").

Here, as discussed above, Petitioner is not challenging the Department of Homeland Security's decision to commence removal proceedings or to adjudicate removability. Petitioner is instead challenging the Respondents' wrongful arrest and detention of Petitioner given his status and due process rights as a former DACA recipient living in the United States with DHS's knowledge. Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.

## II. Merits

Petitioner argues that because Petitioner "previously had been granted DACA in 2014 and had been at liberty in the United States after his DACA status had lapsed in 2019 with the knowledge of the immigration authorities, due process requires that he be provided with a pre-deprivation bond hearing prior to his detention." Pet. ¶ 65. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).

The Court finds that Petitioner has a protected liberty interest in remaining out of custody. Petitioner has lived in the United States since he was four years old, has a U.S. citizen child and wife, had DACA status, and has been working as a journey man for over ten years. Pet. ¶¶ 23–33. Petitioner's DACA status lapsed with his 2019 misdemeanor

conviction and, soon after, DHS issued a Notice of Action stating that he was "amendable to DHS/ICE enforcement action." *Id.* ¶ 33. Petitioner applied for renewal of his DACA status, which was denied due to his misdemeanor conviction. Gov. Supp. at 3–4. Despite DHS's awareness of Petitioner's status, DHS did not contact Petitioner or take any steps to detain him for the next seven years. Pet. ¶¶ 32–33. Petitioner continued to work, spend time with his child and wife, and did not commit any further offenses. *Id.*

The Court finds that Petitioner's prior DACA status combined with his length of residency in the United States, extensive community ties, DHS's awareness of Petitioner's status and subsequent non-action, and Petitioner's seven-year liberty after his DACA lapse, create a liberty interest in Petitioner's release requiring due process before its revocation. *See, e.g.*, *Prior v. Andrews*, No. 25-CV-1131-JLT-EPCG (HC), 2026 WL 698801, at *3 (E.D. Cal. Mar. 12, 2026) ("Petitioner developed a liberty interest in remaining out of custody following ICE's decision not to detain him for the past five years, despite being aware of his deportable convictions [five years earlier], when the Notice to Appear was issued. During those five years, Petitioner had no further encounters with the law, engaged in rehabilitation . . ., worked full-time as an electrician, and helped support his family."); *Kharitonova v. Albarran*, No. 26-CV-1362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.") (citation omitted).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with and providing for his family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's release was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Pet. ¶¶ 59–65. Petitioner has lived in the United States since he was four years old, has a U.S. citizen child and wife, had DACA status, and has been working as a journey man for over ten years. Pet. ¶¶ 23–33. Despite DHS's awareness of Petitioner's status, DHS did not contact Petitioner or take any steps to detain him for the next seven years. *Id.* ¶¶ 32–33. Petitioner continued to work, spend time with his child and wife, and did not commit any further offenses. *Id.* "[T]he risk of erroneous deprivation is high where a petitioner does not receive a pre-detention hearing to determine whether there is a valid basis for detention." *Anderson v. Chernut*, No. 26-CV-1960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (citation omitted). The Court finds that Petitioner's post-deprivation § 1226(a) bond hearing, provided thirty-eight days after his arrest, was insufficient process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("The root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (cleaned up)). Further,

Respondents have not pointed to any valid governmental interest justifying the postponement of a hearing until after Petitioner's detention. *See generally* Ret.

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *J.E.R.M. v. Chestnut*, No. 26-CV-3049-MWJS, 2026 WL 1235223, at *1–2 (E.D. Cal. May 5, 2026) (releasing petitioner because he was arrested without any pre-deprivation process when he had DACA status, committed several criminal offenses, had his DACA renewal application denied, and was randomly arrested at an ICE check-in appointment eight months later); *Ramirez v. Warden of Golden State Annex Det. Facility*, No. 26-CV-2544-DAD-AC, 2026 WL 1078250, at *1, 3 (E.D. Cal. April 21, 2026) (releasing petitioner when he was arrested without any pre-deprivation process when he had DACA status, was convicted of a DUI, lost his DACA status as a result, and was later arrested without notice).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1). Respondents are **ORDERED** to release Petitioner from custody within forty-eight (48) hours under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5. Within seventy-two (72) hours of this Order, Respondents **SHALL FILE** a status report confirming Petitioner has been released from custody and a copy of the conditions of supervision. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before a neutral decision maker to determine whether detention is warranted. The

Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[1] The Clerk **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: August 17, 2026

Hon. Janis L. Sammartino
United States District Judge

[1] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).